LAURNAGA & Co., SUCS., APPELLANTS, *v.* VÉLEZ ET AL., RESPONDENTS.

### Appeal from the District Court of Aguadilla.

No. 924.—Decided March 17, 1913.

INJUNCTION—DAMAGE TO PROPERTY—PROCEDURE—DEFENDANTS.—The owner of a tract of land crossed by a river, the banks of which he claims as his property and from which several persons are engaged in removing gravel without his consent, is not required, in order to file an application for an injunction, to inquire whether such persons are acting under the orders of a superior; but it is sufficient for him to ascertain the names of such persons and make them parties defendant, although some of them were prisoners and all of them were acting under orders of the Commissioner of the Interior.

ID.—APPEAL—OMISSION OF PARTY DEFENDANT.—The mere fact that a necessary party defendant is not included is not a sufficient reason in itself to justify the affirmation on appeal of an order dissolving a preliminary injunction.

RIVERS—OWNERSHIP OF RIVER BEDS.—Before the American occupation rivers and their beds in Porto Rico were of public ownership and as such pertained to the Crown of Spain.

UNNAVIGABLE STREAMS—OWNERSHIP OF STREAMS.—By Article VIII of the Treaty of Paris unnavigable streams and the beds thereof were ceded to the United States, and by section 13 of the Foraker Act were placed under the direction of The People of Porto Rico for their benefit.

RIVER BEDS.—According to the Law of Waters in force in this Island, the bed of a river is understood to be the land covered by the waters of the river in their greatest ordinary swells.

RIVER BANKS.—By banks are understood the lateral borders of the bed of the river which extend from the waters at their lowest level to the point or line to which they rise at the greatest ordinary swells.

RIVER MARGINS.—By margins are understood the borders of streams that are bounded by the banks.

OWNERSHIP OF RIVER BANKS.—The banks of rivers form part of the bed and are
of public ownership belonging to the United States when the stream is navi-
gable and to The People of Porto Rico when it is not.

BROOKS—OWNERSHIP OF BEDS OF BROOKS.—The beds of brooks belong to the
owners of the lands which they cross.

RIVERS—GRAVEL.—Gravel in the natural beds of unnavigable rivers in this Island
belongs to The People of Porto Rico.

The facts are stated in the opinion.

*Messrs. Carlos Franco Soto* and *José de Guzmán Benítez*
for appellants.

*Mr. Charles E. Foote, fiscal,* for respondents.

MR. JUSTICE MACLEARY delivered the opinion of the court.

In this case the appellants sought to obtain an injunction
to prevent the respondents from removing gravel from the
river Culebrinas in the location where it bounds and passes
through their lands.

The allegations set forth in the petition for injunction
may be briefly stated as follows: That the complainant com-
pany is the absolute owner of the rural properties described
in the complaint under the letters "A" and "B"; that at
a short distance from the rear of the buildings situated on
that piece of land described under letter "A" is the river
Culebrinas the banks (*márgenes*) of which are of no mean
height, its waters having undermined the soil as far as the
sides of the said buildings, for which reason the plaintiffs
have been obliged to engage yearly in the building of retain-
ing walls as a protection against the grave damages to which
the said buildings are exposed, especially at such times as
the said river is in flood; that the defendants, without the
consent and notwithstanding the protests of the complainant
company, illegally trespassed upon the lands of the described
property on the 22d, 23d and 24th of October last, taking
therefrom stones and gravel, digging and removing such ma-
terial, in particular, from the very spot on the edge of the
river where the complainant company has constructed its
dikes or retaining walls, thus increasing the risk of destruc-
tive damages threatened by the river aforesaid; that such

action of the defendants, if persisted in, will cause grave and irreparable damages to the complainant company inasmuch as the masonry foundations situated at the side of the said river will thereby be undoubtedly impaired or weakened, thereby entailing serious risks.

The petition seeking the injunction was properly sworn to and presented to the District Court of Aguadilla, and thereupon the said court on October 30, 1912, issued a preliminary injunction or restraining order previously requiring a bond of the plaintiffs in the sum of $500, which was promptly given.

On the first of November of last year the *fiscal* of the District Court of Aguadilla appeared in the name of and representing the Attorney General of Porto Rico on behalf of the defendants and presented a motion in which he prayed for the dissolution of the preliminary injunction which had been previously issued, alleging that the defendants were proceeding with the taking out of gravel from the river Culebrinas by order of the Commissioner of the Interior of Porto Rico and that said gravel was the property of The People of Porto Rico and that it was extracted loose from the surface with tongs at a distance of not less than thirty meters from the mound, upon which mound and at a distance of not less than seven meters from its border there existed the foundations of a wall or fence of the house belonging to the plaintiffs, and that according to the Law of Waters and the Political Code the Commissioner of the Interior of Porto Rico had authority to order the extraction of gravel from the beds of the rivers. The said motion was sworn to, under information and belief, by the *fiscal* and was accompanied by an affidavit of the defendant, Manuel Vélez, repeating and substantiating the facts set forth by the said officer.

On the hearing of the motion counter-affidavits were presented by the plaintiffs amplifying the facts set out in the petition for injunction and contradicting the affidavits filed in support of the motion for dissolution.

The District Court of Aguadilla made an order on the 12th of November last dissolving the preliminary injunction which had been issued theretofore against the defendants on the legal grounds which are set forth in the said resolution.

The appellants allege in their brief that the District Court of Aguadilla erred in dissolving the preliminary injunction which had been issued in this case. As viewed by the appellants' counsel, two questions are involved in the present case: One is the irreparable damage which may ensue to the plaintiffs caused by the extraction of the gravel in the location mentioned on the border of the river where the said plaintiffs have constructed retaining works in order to avoid the dangers which are threatened by the river to the establishments in their walls and foundations; and the second question, involved by implication in the first, is the right of the plaintiffs to the banks and margins of the river Culebrinas which crosses the property of the plaintiffs as private property, and the illegal entry of the said defendants upon the lands of the plaintiffs. On account of the alleged error said to have been committed by the District Court of Aguadilla the appellants pray this court to reverse the order of the trial court dissolving the preliminary injunction which had been issued and to leave in all its vigor the order of the said inferior court, which had been first made on the 30th of October last by which the petition for injunction had been declared sufficient and the plaintiffs to have a right to obtain it, and that an order may be issued by this court granting a writ of injunction against the defendants, with costs.

The respondents herein claim that they are improperly brought into this case as defendants and are merely nominal parties and that they have no interest in the action but are all employes, so to speak, and under the immediate orders of the Commissioner of the Interior; that they have nothing else to do than to obey the orders of their chief; that the only proper party to this proceeding is the Commis-

sioner of the Interior and he is a necessary and indispensable party; and they further set out as a matter of defense that three of the five defendants are convicts in the penitentiary working out their sentences at hard labor as laborers on the public road, and that one of the other defendants is the guard who has these prisoners in charge, and that the first of the five, to wit, Manuel Vélez, is the *capataz* in charge of the working squad at labor on the public roads. Respondents claim, through the *fiscal* of this court, that the mere fact that plaintiffs have omitted to make the Commissioner of the Interior a party hereto is a sufficient reason to affirm the order appealed from.

We do not think this latter is a correct proposition. The plaintiffs found five men at work on the river Culebrinas removing gravel therefrom. They were not required to ascertain under what authority they were acting, claiming, as the plaintiffs did, to be the owners of the land on which the gravel was found; and regarding the persons removing it from the river as trespassers and nothing else, all they needed to do in order to bring their suit and seek for an injunction was to ascertain the names of the parties whom they found infringing upon their rights as they understood them. If the defendants were not the proper parties against whom the injunction should have been issued, they had a right to set up that fact as a matter of defense, which they did in their motion to dissolve the restraining order, which was sustained by the court. The district court gives as one of the reasons for the dissolution of the preliminary injunction the fact that the plaintiffs in their petition for an injunction did not disclose all of the material facts, and omitted to state the authority under which the defendants were acting. No doubt this point made by the trial judge served as a basis for the contention presented by the *fiscal* which we have just noticed and overruled. Aside from this preliminary matter, the view taken by the *fiscal* as to the material questions involved in this case is not essentially different from that of appellants'

counsel, although, of course, he maintains the reverse of the propositions presented and contends that no error was committed by the trial court.

Then let us examine the questions involved in this appeal.

The first relates to the irreparable damage which may be sustained by the plaintiffs from the extraction of the gravel from the bed of the stream and the consequent weakening of the retaining works and the walls and foundations of the buildings belonging to the plaintiffs. This is mainly a question of fact which is denied by the affidavit of the defendants and which the court, on investigation, found against the contention of the appellants. The distance from the spot whereon the gravel was being extracted from the walls which are alleged to be in danger of weakening thereby is too great to render the danger imminent or at all likely to ensue unless the work of extracting gravel should continue for a considerable time and extend to a much larger area than that shown by the record in this case.

The second question involved in this discussion is much more serious, resting as it does upon the right of property in the gravel which was being extracted, the same being claimed by the appellants to be in them and in them alone; and, on the contrary, being claimed by the *fiscal* to be in The People of Porto Rico and under the charge and direction of the Commissioner of the Interior.

Rivers and their beds as existing in Porto Rico were, before the American occupation, of public ownership and as such pertained to the Crown of Spain. By Article VIII of the Treaty of Paris these were ceded to the United States of America; and the Congress, by section 13 of the Organic Act, placed them under the direction of The People of Porto Rico, by and for the benefit of whom they were to be controlled along with other property, "unnavigable streams and the beds thereof."

The Revised Civil Code, which went into effect on July 1,

1902, includes rivers and their beds among other property of public ownership.  See sections 327 and 414, paragraph 1.

By the "bed" of a river is understood, according to the Law of Waters in force and effect in this Island, the land or ground covered by the waters of the river in their greatest *ordinary* swells.  By "banks" (*riberas*) are understood the lateral borders of the bed of the rivers which extend from the waters at their lowest level to the point or line to which they rise at the greatest *ordinary* swells.  By "margins" are understood the borders of streams that are bounded by the banks.

The banks (*riberas*) thus form part of the bed of the river and are consequently of public ownership belonging to the United States when the stream is navigable and to The People of Porto Rico when it is not.  The rivers are expressly subject also to the servitude referred to in article 36 of the Law of Waters, as are also the margins that, as a general rule; belong to private individuals within a zone three meters wide.  This may be better understood by the accompanying diagram.

# BED

GREATEST ORDINARY RISE

| Three meter margin | Banks | Ordinary level | Banks | Three meter margin |
|---|---|---|---|---|

| Private ownership. | PUBLIC OWNERSHIP. | | | Private ownership. |
|---|---|---|---|---|
| Servitude. | Servitude. | | Servitude. | Servitude. |

Both parties herein refer to the Law of Waters, from which we will make a few extracts:

"Article 32. The natural channel or bed of a river or brook is the ground covered by its waters during the greatest ordinary swells.

"Article 33. The beds of all brooks belong to the owners of the estates they cross, with the restrictions established in article 31 with regard to channels for pluvial waters.

"Article 34. The following are of public ownership:

"1. The beds or channels of the brooks which are not included in the foregoing article.

"2. The land covered by the natural beds or channels of rivers during the greatest ordinary swells.

"Article 35. By banks are understood the lateral banks of the beds of rivers included between the low-water line and the line reached by the greatest ordinary swells, and by margins the lateral zones which adjoin the banks.

"Article 36. The banks, even though they be of private ownership by virtue of an old law or by custom, are subject for their entire length, and the margins for a zone of 3 meters, to the easement of public use, in the general interest of navigation, flotation, fishing, and salvage."

Section 133 of the Political Code is also relied on by both parties to this appeal, the appellant apparently using the Spanish version and the respondent the English version, the two being slightly different, the Spanish version stating that the Commissioner of the Interior shall superintend (*vigilar*) all insular public works, including public buildings, public highways and bridges, water towers, *navigable streams and the buildings thereof,* and the English version saying, in addition thereto, that he *shall have charge of* all insular property. The words "have charge of" seem to have been omitted in the Spanish translation. However, in the view that we take of these questions, this variation between the two versions may not be important. There is a distinction in the Law of Waters drawn, in the articles which we have quoted, between brooks (*arroyos*) and rivers (*ríos*). Both are mentioned in article 32, and in article 33 it is said that the beds of all brooks

belong to the owners of the estates which they cross. Article 34 states that the beds or channels of brooks not included in the previous article belong to the public, as also do the lands covered by the natural beds or channels of rivers during the greatest ordinary swells.

Now, then, if Culebrinas is a brook, certainly the bed of that part of it which crosses the estate belonging to the plaintiffs belongs to them and they are the owners of the gravel included therein. However, if this stream is a river, under article 34 the land covered by its natural bed or channel during the greatest ordinary swells belongs to The People of Porto Rico, and of course they are the owners of the gravel contained therein. Nowhere in this record does the word "brook" (*arroyo*) occur, but the stream from which the gravel was taken throughout is denominated a river (*río*). Hence it must be held by us, as it was by the trial court, that the gravel which was being extracted by the defendants from the river was the property of The People of Porto Rico and the plaintiffs had no right thereto. Consequently, the defendants, acting under the orders of the Commissioner of the Interior, were justified and protected in taking out the gravel for use upon the public roads. According to our view of this question, the order appealed from dissolving the preliminary injunction should be sustained. Several other questions arise and many might be mooted in the discussion as to irreparable damage, continuing trespass, multiplicity of suits and all such, but it is not necessary to discuss them in the decision of this case resting, as it does, on the ownership of the gravel being extracted by the defendants from the river (*río*) Culebrinas.

No fundamental error appearing in the record the judgment of the lower court should be in all things affirmed.

*Affirmed.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.